972 F.2d 1338
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, formerly
Aetna Insurance Company, Plaintiff-Appellant,
v.
The UNITED STATES of America, DEPARTMENT OF the ARMY; John
R. Selby, Inc.; Enfield Construction Company;
Clayton's Electric Company, Inc.;
Commercial Union Insurance
Company, Defendants-Appellees.
 No. 91-56064.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 8, 1992.
Decided Aug. 5, 1992.
 
 Before FLETCHER, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Cigna Property and Casualty Insurance Co. appeals the district court's dismissal of its suit against a construction company for whom Cigna had issued a performance bond, that construction company's subcontractor, the subcontractor's surety and the United States. The district court found Cigna's claim was not ripe for adjudication. We affirm.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 3
 In April, 1984, John R. Selby, Inc. (later Enfield Construction Company; "Selby/Enfield") was a awarded a government contract for construction of a barracks facility in Oklahoma. Under the Miller Act, 40 U.S.C. § 270a, Selby/Enfield was required to obtain a performance bond; Aetna Insurance Co. (later Cigna Property and Casualty Insurance Co.; "Cigna") issued the bond on this project.
 
 
 4
 Selby/Enfield subcontracted electrical work on the project to Clayton's Electric Co. ("Clayton") in June, 1984. Clayton obtained a performance bond from Commercial Union Insurance Company ("Commercial Union").
 
 
 5
 In September, 1987, Selby/Enfield abandoned the job site, without completing the project.
 
 
 6
 The government subsequently discovered numerous defects in the electrical work performed by Clayton. On March 6, 1990, it informed Selby/Enfield of these deficiencies and inquired whether Selby/Enfield wished to undertake corrective actions. Cigna was also sent a copy of the letter. There ensued an exchange of letters among the government, Selby/Enfield and Cigna. The government warned Selby/Enfield it would "initiate action [to correct] the electrical deficiencies and pursue[ ] all appropriate legal remedies." Selby/Enfield never informed the government that it was willing to undertake corrective action. In its final letter, dated August 21, 1990, the government reiterated that "legal liability remains with Enfield Construction Company and Aetna Insurance Company." The government announced its intention to seek bids for corrective work and stated that, after work was completed and Selby/Enfield had an "opportunity to address the Government's demand," a contracting officer's decision would be issued.[1]
 
 
 7
 At the time Cigna filed its suit in district court, no contracting officer's decision had been issued. The government states in its brief that it still has not obtained one.
 
 
 8
 On July 31, 1990, Cigna filed a complaint for declaratory relief in federal district court in California. Cigna named as defendants the United States, Selby/Enfield, Clayton and Commercial Union. Cigna sought a declaration that it and Selby/Enfield were not liable for correction of defective work by Clayton or, if they were, that Cigna was entitled to indemnification by Selby/Enfield and also that Clayton and Commercial Union were liable. The United States filed a motion to dismiss or for summary judgment or, in the alternative, for transfer of venue.
 
 
 9
 On April 9, 1991, the district court dismissed Cigna's complaint. It found that, because the government had not yet obtained a contracting officer's decision, nor made a demand on Cigna, Cigna's claim was not yet ripe. Cigna appeals this dismissal.
 
 
 10
 The government has instituted two other judicial proceedings related to the events of this case. The government brought fraudulent construction practice charges against the project superintendent for Clayton; in September 1990, he pled guilty. The government has also brought suit against Clayton for fraud in federal district court in Oklahoma. In addition, Cigna has paid out more than $1.2 million on behalf of Selby/Enfield with respect to this project, and has been granted partial summary judgment in its action to compel Selby/Enfield to make collateral security payments.
 
 DISCUSSION
 
 11
 The district court dismissed Cigna's suit because it was not yet ripe for adjudication.
 
 
 12
 "Ripeness for federal adjudication is a question of law reviewed de novo." Southern Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir.1990), cert. denied, 112 S.Ct. 382 (1991). The court of appeals considers the facts as they exist at the time of its review. Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Board of Oil and Gas Conservation of Montana, 792 F.2d 782, 788 (9th Cir.1986).
 
 
 13
 In determining whether an issue is ripe, the court examines two elements: "fitness of the issue for judicial decision and hardship to the parties if court review is withheld." Id.
 
 I. Fitness for judicial decision
 
 14
 In its analysis of this prong of the ripeness inquiry, the court must determine whether the controversy before it is "definite and concrete, not hypothetical or abstract." Id. An issue is not ripe when injury to the plaintiffs would arise only on the occurrence of a "series of contingencies." Portland Police Ass'n v. City of Portland, 658 F.2d 1272, 1274 (9th Cir.1981), and is thus "too speculative for resolution." Western Oil and Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir.1990), cert. denied, 111 S.Ct. 784 (1991). Thus, this court has held claims to be unripe where no officer challenging a police regulation denying them counsel in certain contexts had ever been placed in situation where the regulation would be triggered, Portland Police Ass'n, 658 F.2d 1274, and where it was unclear when and whether development leases governed by the county regulations plaintiffs challenged would ever be issued. Western Oil and Gas, 905 F.2d at 1291.
 
 
 15
 Cigna contends that its claim is ripe because all necessary factual development has taken place. It asserts that the United States has already made demand upon it. However, the documents it cites in support of this contention reveal that, at most, the government has informed Selby/Enfield and Cigna of potential liability. Moreover, the government must still take several steps before it can ask Cigna to fulfill its obligations on its bond. The government either must complete repair of the defective work and demand payment, or demand performance from the prime contractor and from Cigna, decide whether to pursue the prime contractor at all and, importantly, obtain a contracting officer's decision. If that decision becomes final (after appeal, if any), and Selby/Enfield, having been found liable, fails to respond, Cigna will face demand on its bond. While it is unclear exactly how far the government has proceeded in its decisional process, it is certain that the government has not yet obtained the contracting officer's decision, essential to any demand on Cigna. In addition, the government has alternative remedies which it currently is pursuing.
 
 
 16
 Thus, several "contingencies" must occur before Cigna would be liable. Judicial intervention at this point would be premature. The government should be allowed to complete the procedures available to it for resolving contract disputes.
 
 II. Hardship to the plaintiff
 
 17
 Cigna's inability to demonstrate that delay will cause it undue hardship further supports our conclusion that this suit is not yet ripe. Cigna argues that if it does not receive a prompt determination of its obligations to the government, it may face statute of limitations problems in seeking to recover from those parties potentially liable to it. This argument is without merit. A cause of action for indemnity does not arise until the surety has made payment. United States v. Frisk, 675 F.2d 1079, 1082 n. 7 (9th Cir.1982).[2]
 
 
 18
 Cigna also asserts that it seeks to avoid "the very real practical hardships associated with the pursuit of a stale claim." Such vague allegations of hardship do not weigh heavily in the ripeness analysis.
 
 CONCLUSION
 
 19
 The district court did not err in holding that Cigna's claim was not ripe. It remains for the government to complete several steps of the procedure that might ultimately lead to Cigna's liability, and Cigna has not made the requisite showing of hardship if it is denied judicial resolution of its claim at this time.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under the Contract Disputes Act, the government is required to submit any claim against a contractor to a contracting officer. 41 U.S.C. § 605. The contractor can challenge the contracting officer's decision by appealing to the Board of Contract Appeals or by filing a suit in the United States Claims Court. See Seaboard Lumber v. United States, 903 F.2d 1560, 1562 (Fed.Cir.1990), cert. denied, 111 S.Ct. 1308 (1991)
 
 
 [2]
 While Cigna contends that the statute of limitations will expire on its remedies other than indemnity, it does not specify what those remedies might be